**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOHN SHACKELFORD,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-35 |
| | § | |
| **BONHAM INDEPENDENT SCHOOL DISTRICT,** | § § | |
| Defendant. | § | |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, John Shackelford, Plaintiff, and files this original complaint against Bonham Independent School District (hereinafter "Defendant," "BISD," and "District"), and would respectfully show the Court as follows:

### I.  PARTIES

1. Plaintiff is an individual residing in Fannin County, Texas.

2. Defendant Bonham Independent School District is a governmental entity doing business in Texas and may be served by serving Dr. Marvin Beaty, Superintendent, Bonham Independent School District Administration Building, 1005 Chestnut Street, Bonham, Texas 75418

### II. JURISDICTION

3. Jurisdiction is founded on federal question, specifically, 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; 42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended; and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4.     All prerequisites to filing suit have been met.

### III. FACTS

5.     Plaintiff was employed for approximately eight (8) years by Bonham Independent School District beginning in September 2008.  At the time of his discharge on or about August 27, 2016, he was employed as the Director of Transportation/Maintenance.

6.     Upon information and belief, Defendant had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under the ADEA.

7.     Upon information and belief, Defendant had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

8.     In the summer of 2012, Dr. Marvin Beaty, the new superintendent of BISD, and Bill Wakefield, the new Director of Operations, toured the BISD properties and noticed various amounts of scrap metal and out-of-service equipment and buses.  They decided on a policy of scrapping the metal and using the money for the spirit and morale of the maintenance and ground crews by paying for meals and cookouts.  Plaintiff's predecessor, Ronnie Hill sold scrap materials in the department.

9.     Mr. Wakefield specifically told Plaintiff to "hold on" to the money from the scrap materials and instructed him not to take it to the district business office or the department would never see the money again.

10.    Plaintiff followed these orders and kept the cash and receipts for the sale of scrap metal in his desk drawer.  Over the next two-and-a-half years, he spent approximately $2,400.00 on employee

events, lunches, and donations.  On several occasions during that 30-month time period, Mr. Wakefield referred to the money as a "slush fund" and said there had been such a fund at every place he previously worked.

11. In April or May 2016, Alicia Lang (age 35-39 years, female), director of business services, met with Plaintiff and Mr. Wakefield regarding the disposal of two old, out-of-commission buses. As a result, Plaintiff was instructed to get rid of the buses so Ms. Lang could cancel insurance on them.  Plaintiff was given no procedure to follow in the disposal of the buses.  The experience of his predecessor, Ronnie Hill, had shown that auctioned buses brought almost nothing and scrapping them brought a little more.  When two employees asked to buy the buses, Plaintiff sold them for a combined total of $500.00 plus the removal of the buses.  He considered the money part of the scrapping fund and put it in his desk drawer.

12. On June 13, 2016, Ms. Lang emailed Plaintiff and copied Mr. Wakefield requesting the funds for the scrapped buses be brought to her for deposit.  Plaintiff did not receive any instructions from his supervisor, Mr. Wakefield, to follow up on this request.  Neither of them responded to Ms. Lang.

13. In August 2016, Plaintiff was advised inventory time was approaching and all current property was to be tagged and listed.

14. Because Plaintiff still held the money for the buses, he attempted to give the money to Mr. Wakefield on or about August 23, 2016.  Mr. Wakefield refused it and told him to take it to the business office.

15. Plaintiff first attempted to give the money to Ms. Lang but she was unavailable.  Ms. Kelly Trompler, assistant superintendent, agreed to take the $500.00 and receipts.

16. On or about August 26, 2016, Plaintiff was called to Mr. Wakefield's office and told he had not followed proper procedure and would be sent home for three days without pay.

17. While Plaintiff was still off, Ms. Trompler and Ms. Lang searched his office and desk and found all the receipts for scrapped materials along with copies of titles to the two sold buses and a third original title to an unsold bus.

18. They took these items to the superintendent. He failed or refused to tell them it was Mr. Wakefield and him who had instructed Plaintiff and his predecessor to keep the money from scrap materials and use it for department morale.

19. On or about August 27, 2016, Plaintiff was called to the superintendent's office and asked to turn over his keys and phone. He was told he was "relieved" of his duties.

20. Plaintiff tried to explain what Mr. Wakefield had instructed him to do. Mr. Wakefield said to him in front of the others that he had told Plaintiff to put the money into an activity fund. There was no activity fund and Plaintiff certainly did not have the authority to open an account on behalf of Bonham ISD.

21. Dr. Beaty told Plaintiff if he would agree not to throw Dr. Beaty under the bus, he would see that all of this would go away within two years. Plaintiff took that to mean that if he did not tell anyone that Dr. Beaty and Mr. Wakefield not only knew about the "slush fund" but had in fact created it that he would not be prosecuted. Plaintiff was told he would be paid $1,000.00 for his unused vacation time and that there would be no opposition to him filing for unemployment benefits.

22. Defendant discharged Plaintiff on or about August 27, 2016.

23. Plaintiff was replaced by Claude Lewis (age 35-39 years) as Interim Director of Maintenance and Melissa Daniels (age 35-39 years, female) as Interim Director of Transportation.

24. His replacements are much younger and less experienced than Plaintiff.

25. Ms. Lang received no discipline even though she knew and approved the handling of the scrap metal and proceeds.

26. No one in the finance or business office received any discipline.

27. Bonham ISD entered into a two-year employment contract with Mr. Shackelford dated March 22, 2016 for the 2016-2017 and 2017-2018 school years. A true and correct copy is attached hereto as **Exhibit A.**

28. Paragraph 8 of the contract requires any suspension be for "good cause as determined by the Board."

29. Paragraph 9 requires a termination of contract be made by a "determination by the Board of good cause or financial exigency."

30. The Board made no determination pursuant to paragraphs 8 or 9 of the contract to suspend or terminate Plaintiff's employment at the time Plaintiff was discharged.

31. The Bonham Independent School District is therefore in breach of the contract.

32. At the time of the incident, Mr. Shackelford was earning approximately $45,000.00 per year plus benefits.

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

### COUNT I

**Violations of 42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended**

33. A. Plaintiff alleges that he was discriminated against in violation of 42 U.S.C.A. §2000e, *et seq.* (Unlawful Employment Practices), as amended, protecting Plaintiff (male) from gender discrimination in the workplace.

34. B. Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A. § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

35. C. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A. § 2000e, e*t seq*. (Unlawful Employment Practices), as amended.

36. D. On or about March 28, 2017, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On October 30, 2017, he received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated October 26, 2017.

37. In addition to Count I, or in the alternative, Plaintiff alleges as follows:

## COUNT II

## Violations of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended

38. A. Plaintiff alleges he was discharged in violation of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended, protecting Plaintiff (51 years of age) from discrimination on the basis of age.

39. B. Plaintiff claims all relief, legal and equitable that effectuate his rights under 29 U.S.C. § 623, *et seq*. (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

40. C. Plaintiff requests reasonable attorney's fees as permitted under 29 U.S.C. § 623, *et seq*. (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

41. D. On or about March 28, 2017, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On October 30, 2017, he received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated October 26, 2017. 2016.

## V. SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. §1367

42. Plaintiff would show the Court has supplemental jurisdiction over Plaintiff's state law claims because they "derive from a common nucleus of operative fact" and are such that a Plaintiff "would ordinarily be expected to try them in one judicial proceeding." United Mine Workers v. Gibbs, 86 S.Ct. 1130, 383 U.S. 715, 166 F.2d 218 (1966) at 725. See Wright, Law of Federal Courts 4th Edition, p. 105

43. Plaintiff's state law claim and his Federal law claims all arise from Plaintiff's employment and subsequent discharge with the Defendant.

44. Therefore, 28 U.S.C. §1367 confers supplemental jurisdiction over Plaintiff's state law claims.

**A.     Breach of Contract**

45. Plaintiff realleges and incorporates the previous paragraphs as though fully set forth herein verbatim.

46. Bonham ISD entered into a two-year employment contract with Mr. Shackelford dated March 22, 2016 for the 2016-2017 and 2017-2018 school years. A true and correct copy is attached hereto as **Exhibit A.**

47. Paragraph 8 of the contract requires any suspension be for "good cause as determined by the Board."

48. Paragraph 9 requires a termination of contract be made by a "determination by the Board of good cause or financial exigency."

49. The Board made no determination pursuant to paragraphs 8 or 9 of the contract to suspend or terminate Plaintiff's employment at the time Plaintiff was discharged.

50.     Defendant has violated the agreement by failing to comply with paragraphs 8 and 9 of the contract.

51.     Defendant has proximately caused damages to Plaintiff as a result of its breach of the agreement for which Plaintiff seeks just compensation.

## V.  DAMAGES

52.     Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct.  Plaintiff claims all relief at law and in equity pursuant to 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended, and 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended.

53.     Plaintiff would show he has sustained damages as a proximate cause of Defendant's breach of contract and seeks all damages at law and in equity as a result of the breach of contract.

## VI. ATTORNEY'S FEES

54.     Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorney's fees.

## VII. JURY DEMAND

55.     Plaintiff requests that this matter be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing hereof, Plaintiff have judgment against Defendant for actual damages in an amount within the jurisdictional limits of the Court together with interest on said amount at the highest rate allowed by law; reinstatement; liquidated damages; mental anguish; reasonable attorney's fees; costs of court; prejudgment and postjudgment interest; and any and all further relief, at law or in equity, general or

special, to which Plaintiff may show himself justly entitled.

                Respectfully submitted,

                **RONALD R. HUFF**
                Attorney and Counselor at Law
                112 South Crockett Street
                Sherman, Texas 75090
                (903) 893-1616 (telephone)
                (903) 813-3265 (facsimile)
                ronhuff@gcecisp.com


                /s/ Ronald R. Huff
                Ronald R. Huff (SBN 10185050)
                **ATTORNEY FOR PLAINTIFF**